

**Signed September 24, 2021.**

_____
Ronald B. King
Chief United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PATRICIA ANN REED, | § | CASE NO. 17-52875-RBK |
| | § | |
| DEBTOR | § | CHAPTER 13 |

## OPINION

The issue in this case is whether Federal Rule of Bankruptcy Procedure 3002.1 applies to the claim of an ad valorem tax lien transferee. Patricia Ann Reed (the "Debtor") filed a voluntary chapter 13 petition on December 15, 2017. Ovation Services, LLC, as agent for FGMS Holdings, LLC ("Ovation"), is the transferee of an ad valorem tax lien against Debtor's principal residence and homestead.

In its *Notice of Post-Petition Charges under 11 U.S.C. § 506(b)* (the "Notice") filed on May 10, 2021, Ovation asserted that it is entitled to reimbursement of reasonable post-petition fees, costs, and charges in the total amount of $1,488.33. The chapter 13 trustee (the "Trustee")

objected and argued that Federal Rule of Bankruptcy Procedure 3002.1 applies to Ovation's claim and limits Ovation's fees to those incurred within 180 days prior to the Notice.

## BACKGROUND

On March 28, 2012, the Debtor executed a Promissory Note and Deed of Trust – Tax Lien with Diversified Portfolio, LLC in exchange for payment of ad valorem taxes owed on the Debtor's principal residence (the "Property"). The tax lien transfers covered the payment of the Debtor's ad valorem taxes for tax years 2006, 2007, 2008, 2010, and 2011. Documents executed by the Debtor authorizing the transfer of the tax liens from Bexar County to Diversified Portfolio, LLC were filed in Bexar County. The tax liens were transferred from Diversified Portfolio, LLC to FGMS Holdings, LLC in November 2013.

In her bankruptcy case, the Debtor listed the Property as her homestead with no objections filed. Ovation filed its original proof of claim on January 30, 2018 in the amount of $23,098.47.[1] The Debtor's chapter 13 plan was confirmed on May 17, 2018 and provided for Ovation's oversecured claim to be paid over a sixty-month term. The plan pays Ovation the principal balance of $8,260.62 by monthly payments of $220.75 at 13.99% interest and prepetition arrears of $14,837.00 by monthly payments of $274.78 at 0.00% interest. On May 10, 2021, Ovation filed the Notice seeking reasonable post-petition fees, costs, and charges in the amount of $1,488.33 under the terms of the agreement with the Debtor and as an oversecured creditor under § 506(b). The Trustee objected to the Notice and asserted that under Rule 3002.1 Ovation's fees and charges should be limited to those incurred within 180 days prior to the Notice.

---

[1] Ovation filed two amended claims, one on February 26, 2018 and the other on June 4, 2021.

In response, Ovation argued that Rule 3002.1 does not apply to Ovation's claim for two reasons. First, Ovation argued that Rule 3002.1 applies only to claims for which the plan provides "contractual installment payments" and the payments to Ovation under the confirmed plan are not contractual payments. Second, Ovation argued that Rule 3002.1 applies only to claims that are secured by a "security interest in the debtor's principal residence." Statutory tax liens are not a "security interest" as defined by the Bankruptcy Code.

## DISCUSSION

Section 506(b) of the Bankruptcy Code provides that the holder of an oversecured claim is allowed "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b). There is no dispute that Ovation is the holder of an oversecured claim for ad valorem taxes on the Debtor's principal residence that arises by force of Texas Tax Code § 32.01. The parties disagree, however, over whether Ovation's claim meets the applicability requirements of Rule 3002.1.

Federal Rule of Bankruptcy Procedure 3002.1(a) "applies in a chapter 13 case to claims (1) that are secured by a *security interest* in the debtor's principal residence, and (2) for which the plan provides that either the trustee or the debtor will make contractual installment payments." FED. R. BANKR. P. 3002.1(a) (emphasis added). When Rule 3002.1 applies:

> The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal

3

> residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

FED. R. BANKR. P. 3002.1(c).

Ovation's first argument against the applicability of Rule 3002.1 focused on the language in Rule 3002.1(a) that the plan must pay the creditor "contractual installment payments." FED. R. BANKR. P. 3002.1(a). Ovation argued that the plan payments on the arrearage portion of its claim are not "contractual installment payments" under Rule 3002.1(a). This argument is not persuasive. It appears that this language, added to Rule 3002.1(a) by amendment in 2016, was intended to clarify that the rule applies when the trustee or debtor makes ongoing mortgage payments "under the plan," even if there is no prepetition arrearage to be cured. The Advisory Committee added this language to make clear that the rule applies in both scenarios. The Trustee is correct that the term "contractual installment payments" includes payments to Ovation under the plan for prepetition arrearages. Under the plan, Ovation's claim will be paid in full.

Ovation's second argument focused on the requirement that a claim must be secured by a "security interest" in the debtor's principal residence for Rule 3002.1 to apply. To determine whether Rule 3002.1 applies to Ovation's claim, an analysis of the character of Ovation's lien is helpful.

### 1. *Ovation Holds a Valid Statutory Lien*

The Bankruptcy Code recognizes three types of liens: statutory liens, judicial liens, and security interests. The Code defines "statutory lien" as a "lien arising solely by force of a statute on specified circumstances or conditions . . . but does not include security interest or judicial lien." 11 U.S.C. § 101(53). The Code defines "security interest" as a "lien created by an agreement." 11 U.S.C. § 101(51). Because Rule 3002.1 applies only to claims secured by a "security interest,"

4

whether Rule 3002.1 applies to Ovation's claim depends on whether the claim is secured by a security interest, a statutory lien, or both.

It is undisputed that Ovation's claim as a transferee and subrogee of Bexar County's rights as the taxing authority is a statutory lien that arises automatically under the Texas Tax Code. TEX. TAX CODE § 32.01. Under Texas law, a transferee of a tax lien is "subrogated to and is entitled to exercise any right or remedy possessed by the transferring taxing unit." TEX. TAX CODE § 32.065(c). Tax lien transferees are permitted to charge interest, attorney's fees for collection, and attorney's fees if the property owner files for bankruptcy. TEX. FIN. CODE § 351.0021; TEX. TAX CODE §§ 32.06, 32.065.

### 2. *The Deed of Trust*

The Trustee "does not seek to invalidate" Ovation's statutory lien, but rather, the Trustee "seeks acknowledgment that the liens of Ovation are a hybrid."[2] Because Ovation "chose to require execution of a promissory note and deed of trust by the Debtor[] using [her] principal place of residence as collateral for the repayment of the note," the Trustee avers that Ovation's claim is secured by both a statutory tax lien and a security interest for purposes of Rule 3002.1.[3]

Ovation argued that its claim cannot be both a statutory lien and a security interest because the three types of liens recognized in the Bankruptcy Code are mutually exclusive. ***In re Thompson***, 240 B.R. 776, 781 (B.A.P. 10th Cir. 1999) (affirming that a lien arising from an antenuptial agreement was a "security interest" which the debtor could not avoid). The origin of a lien establishes its nature. *Id.* ("It is the origin of the creditor's interest rather than the means of enforcement that determines the nature of the lien."). Here, the origin of the lien is the Texas Tax

---

[2] ECF No. 129, pg. 4.
[3] ECF No. 129, pg. 4.

5

Code, which provides for the automatic creation of this type of lien. TEX. TAX CODE § 32.01. Ovation relied on Fifth Circuit and Texas state court authority to support its position that Ovation holds only statutory liens on the Debtor's homestead.

In *Benchmark Bank v. Crowder*, the Texas Supreme Court addressed whether a third party may be subrogated to an IRS tax lien and entitled to enforce the lien against the taxpayer's homestead. **Benchmark Bank v. Crowder**, 919 S.W.2d 657, 659 (Tex. 1996). The case involved the refinance of a debt secured by a federal tax lien. *See id.* The taxpayers in *Benchmark* executed a deed of trust, which provided that in the event loan proceeds were used to pay any outstanding liens, the lender would be subrogated to any and all rights and liens. *Id.* The Texas Supreme Court held that the refinancing transaction did not alter the nature of the original lien. *Id.* at 661. "The deed of trust did not create a new lien against the Crowders' property. Rather, the deed of trust preserved and extended the existing tax lien, but also prescribed new terms and conditions for foreclosure." *Id.* at 662.

In *In re Kizzee-Jordan*, the Fifth Circuit analyzed the nature of an ad valorem tax lien transferee's claim for purposes of 11 U.S.C. § 511. **In re Kizzee-Jordan**, 626 F.3d 239 (5th Cir. 2010). The Fifth Circuit rejected an argument that once the transferee paid the original taxing authorities, the transferee's tax claim was extinguished and replaced by an entirely new debt under the terms of a promissory note. *Id.* at 244–45. The Fifth Circuit held that the entity holding the debt may change, but the nature of the underlying tax debt does not change. *Id.* at 244. The Fifth Circuit extended and reaffirmed this analysis in a Truth-in-Lending Act case. **Billings v. Ovation Fin. Servs., LLC**, 821 F.3d 608 (5th Cir. 2016).

Based on the analysis contained in *Kizzee-Jordan*, this Court agrees that the nature of Bexar County's statutory tax lien did not change when it was transferred to Ovation. The Trustee,

6

however, argued a novel variation on *Kizzee-Jordan*. While the Fifth Circuit in *Kizzee-Jordan* addressed whether the promissory note *replaced* the transferee's tax claim, the Trustee pointed out that the analysis does not address whether the two liens could co-exist. The Fifth Circuit acknowledged that Texas law grants tax lien transferees subrogation rights that go above and beyond the rights held by the original taxing authority. *In re Kizzee-Jordan*, 626 F.3d at 244–46. For example, transferees can charge additional closing costs, fees, and a higher rate of interest. *Id.* at 245. The Trustee argued that this acknowledgment leaves open the possibility that statutory liens and consensual liens relating to tax claims can co-exist.

Some bankruptcy courts have acknowledged the ability for liens to co-exist. In 2017, the Bankruptcy Court for the District of New Jersey addressed whether a lien held by a homeowner's association (the "HOA") for unpaid assessments was a security interest on the debtor's principal residence, or whether it was a statutory lien arising under the New Jersey Condominium Act. ***In re Keise***, 564 B.R. 255 (Bankr. D.N.J. 2017). The debtor argued that the lien was statutory, therefore subject to modification under § 1322(b)(2). The HOA argued that the lien was a consensual lien protected from modification under § 1322(b)(2) based on a Declaration of Covenants and Restrictions agreement. The court first recognized that, while the Code "does not expressly state that the three types of liens are mutually exclusive, the legislative history underlying the Code supports such an interpretation." ***In re Keise***, 2018 WL 624105, at *2 (D.N.J. Jan. 30, 2018).

The bankruptcy court held that the HOA's lien was secured by two separate liens, one consensual and one statutory. *See id.* The court found that the liens operated simultaneously to secure the HOA's single claim. *Id.* at *5 (explaining that "each lien [was] available to the [HOA]

7

to enforce its claim"). Under the language of the Condominium Act, the existence of the consensual lien did not preclude the creation of a statutory lien. *Id*.

The district court reversed and remanded, finding that the bankruptcy court erred in its threshold analysis of whether the Condominium Act applied to the HOA. *Id.* In its explanation of the bankruptcy court's analysis, the district court noted that because § 1322(b)(2) applies exclusively to a "claim secured *only* by a *security interest* in real property," the HOA's claim was not protected from modification because it was secured by both a security interest and a statutory lien. *Id.* After remanding on other grounds, the district court expressed "no view as to the question of whether the lien held by the [HOA] in this case is statutory, consensual, or both." *Id.* at *14.

Under the Bankruptcy Code, statutory liens and security interests "have mutually exclusive definitions; a lien must be one or the other." **In re Holmes**, 603 B.R. 757, 770 (D.N.J. 2019). Ovation correctly asserted that that the three types of liens are mutually exclusive. The *Keise* opinion suggests, however, that while the types of liens are mutually exclusive, multiple separate liens may be created to support a single debt. The Code does not preclude "the creation and employment of multiple enforcement mechanisms to recover a single debt." *In re Keise*, 564 B.R. at 264. Similarly, the Trustee argued that Ovation's claim could be secured by two separate liens collateralizing the debtors homestead, one statutory and the other consensual. To determine whether Rule 3002.1 applies to Ovation's ostensible consensual lien, it is necessary to address whether such lien is a separate lien which is valid and enforceable under Texas law.

### 3. *Under Texas Law, Ovation's Deed of Trust Did Not Create a Separate Lien*

Under Texas law, homesteads are generally protected from forced sale to satisfy debts, except for those debts specifically enumerated in the Texas Constitution and the Texas Property Code. TEX. CONST. art. XVI, § 50(a); TEX. PROP. CODE ANN. § 41.001(b); *see* **Wells Fargo Bank,**

*N.A. v. Murphy*, 458 S.W.3d 912, 917 (Tex. 2015). The list of exceptions to the general rule includes (1) claims for purchase money of the property, (2) taxes due on the property, (3) certain work and material to improve, renovate, or repair the property, (4) certain extensions of credit for home equity loans, and (5) reverse mortgages. TEX. CONST. art. XVI, § 50(a); *see Barras v. Barras*, 396 S.W.3d 154, 164 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Seizure of homestead property for a debt that is not specifically allowed by the Texas Constitution is invalid.

Ovation does not dispute that the Property is the Debtor's homestead, nor that the Property was her homestead prior to her transactions with Ovation in 2012. Ovation's statutory lien, created by Texas Tax Code § 32.01 and transferred from the Bexar County taxing authorities, clearly meets the exception in the Texas Constitution for taxes due on the Property. Tax debts are valid against homestead, even if they are enforced by a third party due to a transfer of the original debt. *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 659 (Tex. 1996); *see Fernandez v. FGMS Holdings, L.L.C.*, 2017 WL 6888530, *2 (S.D. Tex., July 25, 2017) (holding that the homestead protections in the Texas Constitution did not bar a tax lender's foreclosure based on a tax lien debt on property owner's homestead). Ovation's statutory lien based on tax debt, therefore, is enforceable against the Debtor's homestead under the Texas Constitution, and Ovation is entitled to enforce its lien for the entire tax debt, including any fees, costs, and charges to which it is entitled under the provisions of the Texas Tax Code and Texas Finance Code.

Ovation argued that it required execution of the promissory note and deed of trust because it was required by statute. Section 32.065(b) of the Texas Tax Code states:

> [A] contract entered into under Subsection (a) between a transferee and the property owner under Section 32.06 that is secured by a priority lien on the property *shall* provide for foreclosure in the

9

>> manner provided by Section 32.06(c) *and*: (1) an event of default;
> (2) notice of acceleration; and (3) recording of the deed of trust or
> other instrument securing the contract entered into under Subsection
> (a) in each county in which the property is located.

TEX. TAX CODE § 32.065(b) (emphasis added). Ovation argued that it documented the transaction in this manner because the Texas Tax Code provision required Ovation to memorialize the terms of the agreement with the Debtor, and if the agreement granted a new and separate security interest, "then it would run afoul of the Texas Constitution because it would not meet the Texas Constitution's requirements."[4] This Court agrees and finds that while Ovation had to comply with the Texas Tax Code and could provide new terms and conditions for foreclosure, no new security interest was created because the nature of the underlying tax debt does not change. ***In re Kizzee-Jordan***, 626 F.3d 239, 244 (5th Cir. 2010); *cf. Benchmark Bank*, 919 S.W.2d at 659 (federal tax lien). Because Ovation does not hold a separate, enforceable security interest against the Debtor's principal residence and homestead, the Court finds that Rule 3002.1 does not apply to Ovation's claim.

## CONCLUSION

Rule 3002.1 applies only to claims that are secured by a security interest, as defined by the Bankruptcy Code, in the debtor's principal residence. Ovation's claim is secured by a statutory lien created by the Texas Tax Code which is enforceable against the Debtor's homestead under Texas law. Statutory liens, as defined by the Bankruptcy Code, expressly exclude security interests and are not subject to Rule 3002.1. Ovation's deed of trust executed by the Debtor did not create

---

[4] ECF No. 128, pg. 11.

a separate lien but merely preserved and extended the existing tax lien. Because Ovation's claim is secured by a statutory lien, but not by a separate and enforceable security interest, the Court finds that Rule 3002.1 does not apply. The Trustee's objection will be overruled.

This Opinion shall constitute the findings of fact and conclusions of law of the Court pursuant to FED. R. BANKR. P. 7052 and 9014. A separate order has been entered.

# # #